Good morning, Your Honors. My name is Timothy Hiller. I represent Brittany Zzepanski. Please speak right into the mic, yeah. Sure. My apologies. My name is Timothy Hiller. I represent Brittany Zzepanski. And this case involves the, is a Social Security disability claim and involves the vocational significance of the work function, the essential work function of being able to show up for work. And, you know, as I was going through this case the other night, I thought that Ms. Zzepanski herself, in a hand-scribbled note to the Appeals Council, summed this case up really well. She had just gotten the ALJ's decision and she wrote, you know, a letter in her own handwriting to the Appeals Council and she concluded it by saying, how can I do these jobs if I can't leave my house due to agoraphobia? And, you know, after all the briefing and all the litigation that's ensued, I still don't think the commissioners answered this question. The ALJ's RFC, Residual Functional Capacity, in this case, said that Ms. Zzepanski would need to miss up to one day of work per month. That's the ALJ's own finding. The vocational expert was asked — She could do the job for the remaining days of the month. That's the finding, at least. Yes. The finding would be there would be one day of work per month that she would not be able to be present and that the other days she would be able to work within the other limitations that the ALJ set forth. Yes. So the vocational expert was asked about this work function of being able to show up to work and he said, well, for the — she said, well, for the first 90 to 100 days, there's a probationary period for unskilled jobs where employers typically tolerate zero absences. And then she said, after the first 90 to 120 days, employers will typically tolerate two absences. And so the ALJ found that she could do those unskilled jobs. And so the issue here that's teed up is, you know, is an inability to maintain employment past 90 to 120 days due to absenteeism relevant, vocationally relevant? And it clearly is. The commissioner's own regulations describe the analysis as whether or not the claimant can adjust to other work. Let's — I'm sympathetic to your argument that probationary periods may be relevant to disability determinations. But let's say the circumstance is that before somebody gets hired, they have to go through a training program. Does that — would that make a difference? In other words, you would not be hired. You would have to go through a training program. In that case, I think it could potentially be significant that you haven't been hired yet. Because all of the authority that they've cited talks about employer hiring practices. And so if the — if it could be framed that they have not yet been hired, I think that could potentially be an employer hiring preference. A lot of the case law talks about an inability to complete and pass a medical examination pre-hiring. And so I think maybe that could be analogous. But here, there's no doubt that, you know, we're dealing with the first 90 to 100 days of employment. So while that may be a closer call, I think we're in the safe zone in this case. What is it that you're looking for? I'm sorry? What are you asking for?  But do we know that there are no jobs that do not require a probationary period? Now, you know, the government says that's up to you to show. I think that's a problem for them because it is up to the ALJ to have a complete record. But shouldn't we send it back, assuming we agree with you? The probationary period. Shouldn't we send it back to see if there are, in fact, jobs that your client can do that don't require this probationary period? So that's a good question, Your Honor. I don't think there's any reason to send it back because of Ms. Zipanski's other impairments. She was limited to unskilled work. And so when we're talking about unskilled work, here's the key exchanges on transcript 58. And Ms. Zipanski's attorney at the administration asked, okay, how much absenteeism or tardiness is tolerated in a routine, unskilled, entry-level position during a probationary period? Now, the vocational expert said during the probationary period of 90 to 120 days, there's typically no tolerance for absence. So we know she's limited to unskilled work from the record based on her other impairments, and the vocational expert is saying, well, for this period of 90 to 120 days, there's no ‑‑ The question posed was typically, or actually the answer on 59 was, so on a typical sedentary, unskilled, entry-level position, what is the level of tolerance for absenteeism no more than two days, and that's later on ticked down to one day per month every single month, as you said at the onset. But that still leaves, I think that there was some testimony from the vocational expert, that there are hundreds of thousands of these jobs. Is that right? Yes, Your Honor. So that still leaves thousands, even if you've got a small percentage, that don't have such a probationary period with no tolerance for absenteeism. That leaves thousands of jobs. Why isn't that enough? Because there's no evidence in the record to support the idea that there's thousands of jobs available. I know that their argument goes something like this, well, there's all these jobs, and they say typically, so let's just assume that 1% of the employers don't tolerate this. But the problem is there's no evidence in the record for that assumption, and it's just sheer ‑‑ Well, the problem is that the question posed was obviously a hypothetical question. Yes. First. Second, it does not talk about all the jobs. It talks about a typical job. And so what we're left with is not all that much, but I'm intrigued by the fact that you insist that the better course is to remand for calculation of benefits as opposed to more fact-finding. My experience with Social Security administrative hearings is that, I mean, just like she answered with after the probationary period, they're always testifying on what typical employer tolerances are. And so ‑‑ but, you know, I do have to admit that if you are inclined to see some wiggle room in the word typically, then there could possibly be a purpose for remand. I just don't see it that way. You're being a good lawyer, and what you're saying is that your chances on remand, if we do it the way that my colleagues are suggesting, are not as good as the outcome that you think you would get, obviously, if we just said calculate benefits. Sure. I mean, any time it goes back to the agency, you run a risk. Your chances are better if you win. Yes. Thank you. Thank you. May it please the Court. I represent the Commissioner of Social Security. Your Honors, the Court should affirm the Commissioner's decision because it's supported by substantial evidence. As the Supreme Court recently held in Bieseck v. Berryhill, whatever the meaning of substantial in other contexts, in the Social Security context, the threshold is not high. It means ‑‑ As we know, there may be, but there is no job this guy can do according to what the vocational. Let me give you what I think is an analogy. Somebody applies, the only job they can do is to be a fireman, and you need both legs to be hired as a fireman. He has only one leg. It turns out that if you're already a fireman, they keep you in a desk job, and they show that people with one leg have desk jobs. Does that mean that somebody without a leg has that job available? The answer is no. So what's the difference between that case and this? Your Honor, as we pointed out in our brief, circuit courts have recognized that the entire disability scheme is to show an approximation of the availability of work. Approximation is fine. And if you show that there are jobs that don't have this probationary period, then you're fine. But if, as seems on the record now, that there is no indication of a job that doesn't have a probationary period, and this fellow can't meet the probationary period, how can you say that a job is available? Okay, Your Honor. Our position is that counsel absolutely did not establish that there is such a probationary period in unskilled jobs, much less the exact three applicants. Step five, though, so isn't that your burden? It's not the government's burden. The government's burden is to show that there is work in the national economy that the claimant could perform. And the vocational expert testified that a person with Mr. Pansky's RFC could miss up to two days of work per month and be able to do those jobs. No such jobs are available to him because the expert, the vocational expert says to get such a job, typically you need a probationary period, and this guy can't do that. Now, whose question is whose job is to have a complete record? If a job to have a complete record is VALJ, then it is up to VALJ in a situation like that not to say probationary period is irrelevant, but to say what jobs are there without probationary period. I disagree, Your Honor, for the following reasons. The exact question posed by counsel was? It's 59? Correct. Starting on 58, I'm sorry. Okay, and how much absenteeism or tardiness is tolerated in a routine, unskilled entry-level position during a probationary period? Counsel did not, counsel's question presupposes the existence of a probationary period. Therefore, the vocational expert's response is given that supposition. Second, the vocational expert only opined as to what was typical, not what is present in all unskilled jobs. I understand. And the question is whose job is it to deal with that uncertainty? I'm not comfortable with Petitioner's appellants saying we can just assume no such jobs are there, but I think this record is incomplete. And if a record is incomplete, what is the big deal about sending it back and letting the ALJ find out? Your Honor, in response to that line of questioning on 58 and 59, the ALJ immediately shut down that line of questioning for the simple reason that probationary periods do not enter into the determination of disability. So this, it seems to me, is the fundamental point, right? And I wonder if you can help us. Is there a specific regulation or rule on probationary periods as being excluded from the calculus of whether someone can do the job? Not exactly in those terms, Your Honor. But we believe that probationary periods do not enter into the determination of disability for these reasons. First. And in answering that question, could you cite to a single district court or appellate case that goes your way? It seems that every district court opinion goes the opposite from what you're arguing. We cited in our brief Morrow v. Astru, the Northern District of New York, which was also a case that I handled on the same question. I would point out that counsel's brief does not cite a single binding authority for that proposition in their brief as well. We don't believe that probationary periods are relevant for the following reasons. The commissioner's regulations specifically provide that in order to support a finding that an individual is not disabled at the fifth step, the commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the national economy that the individual can perform. To this end, the commissioner's regulations and rulings are clear that the only factors in reaching this determination are the vocational qualifications of age, education, and previous work history, and the RFC. Second, the Social Security Act and the commissioner's regulations are also clear that an inability to obtain work, including the inability to find work in the immediate area. But all of those and the one case of yours that you cite don't go to a physical reason why the person can't get the job. They go to not looking, they go to other things. That's why for me the analog is the one I gave you about a job where if somebody is in it, they can stay despite the fact that they have a physical disability like no leg, and somebody who looks for that job but will not be hired because no one is hired who doesn't have two legs. I mean, Social Security disability is a practical matter. Can this guy get a job? Not does he fail to do it or so on, but can his physical condition permit him to get a job? And if a probationary period is required, and I'm not saying it is, but if it is required and he cannot physically meet that, then how can one say that a job is available? As we pointed out in the brief, Your Honor, the Supreme Court has upheld the commissioner's determination that a limitation on the ability to work has to last for 12 consecutive months, and that's Barnhart v. Thomas. The limitation itself must last 12 months, 12 continuous months or more. But the limitation, his limitation lasts 12 months. It's that the job isn't available. That's a different thing. Ms. Schapansky's entire point is that for a period of 90 to 120 days, she would not be able to perform the job per her reading of the V.E. testimony. The government's point is that that limitation, lasting 90 to 120 days, does not meet the definition of disability under the Act and under Barnhart v. Thomas. Why isn't a probationary period really just the first part of a job, and after an employee has been hired but before she has attained permanent employee status? The Dictionary of Occupational Titles already defines how long it will take to learn this job. There is no second inchoate set of requirements that we have, that the V.E. should be inquiring into or the ALJ should be inquiring into in every case. The DOT, the commissioner's regulations, have already taken administrative notice of the vast range of work, of the requirements of that work. And to say that there's a second additional set of. So I think context. I very much appreciate the government's buy-in because we're talking about a national economy and national uniform standards, which I appreciate. But let's say that we were talking about law clerks, and every law clerk position in the country had a probationary period of 30 days. And this is to pick up a little bit on what my colleague, Judge Calabresi, was, I think, trying to get at. And so every single law clerk position in the country has got a probation period for 30 days. And you cannot be, as a law clerk, absent from your position for more than five days. And one of my, you know, someone applies to be a law clerk for me, but tells me that she's going to have to be absent for six days. Isn't the fact that every law clerk position has a probationary period and does not permit absences of more than five days relevant in that case? In that case, Your Honor, we would have had a question from counsel that was posed about the exact occupations that were relevant. We pointed out. So you're going, in answer to that question or that hypothetical, you're going back to the problem with the question posed by the attorney. Correct, Your Honor. But let's say that the question had been rightly phrased, and the question had been, is there a single job among these three unskilled jobs out there in the national economy that does not have a probationary period? A vocation expert says, no, every single one of these jobs has got a probationary period up to 90 or 120 days. Then what would your answer have been? Respectfully, Your Honor, I believe that would best be understood as a hiring practice of employers under 416.966, which is specifically excluded. In answer to my question about the law clerks, I think you said that that would be relevant. Insofar as it was correctly posed and is excluded by regulation. I want to come back a moment to your statement that a disability has to last more than 90 a certain amount of time. Aren't you confusing whether the disability lasts longer, which in this case it does, the disability continues, continues throughout, and whether the requirement to be hired because of the disability is more than a certain amount of time. Supreme Court hasn't said anything about the amount of time that is needed to be hired. They said we will not grant disability where the disability is temporary. And our position is, Your Honor, that at the very most, what Ms. Schapansky has established is that she would have difficulty maintaining employment for 90 to 120 days. Yes, that is so, but that has nothing to do with how long the disability lasts. Her disability lasts forever, as far as we know. After 90 to 120 days, the vocational experts stated that she could perform that job. Disability would no longer keep her from having a job. But that's different from saying does the disability last. Okay. Thank you. Thank you, Your Honor. Multiple circuits, just to get back to an answer you gave, multiple circuits, at least as I have read them, have recognized that an inability to keep a job precludes a finding that a claimant can engage in substantial gainful activity. Isn't that correct? That's correct, Your Honor. And our position is that after any applicable probationary period, which has not been established, that she would be able to perform those jobs, as established by the vocational expert when he stated that a person with her RFC could miss up to two days of work per month. This position rests on a reading of 58 and 59 of the record that it's ambiguous, actually that it's not established, in your view. Correct. But another reading is that it's ambiguous. But you would disagree with that, of course. I would, but I understand your point, Your Honor. And you would disagree just that an inability to complete a probationary period is an inability to keep a job. Correct. Thank you. I'll just point one thing out about the question. A lot was made about how vague this question is, and I think it's actually clearer testimony than is being led on. The question is, okay, and how much absenteeism or tardiness is tolerated in a routine, unskilled, entry-level position during a probationary period? The vocational expert doesn't say, what are you talking about? What's a probationary period? What probationary period? The vocational expert says during the probationary period of 90 to 120 days, there is typically no tolerance for absence. It's a lot clearer than I think he was portraying it to be, and I'm sympathetic to, you know, the position, but I just think that there's not as much wiggle room there as is being led on. And unless there's any other questions, I'll take them. So you still insist on remand for benefits, calculation benefits, after all that? I'm not going to concede that the matter shouldn't be remanded for the calculation benefits. I think that the ‑‑ but I understand your point. Thank you both for your arguments.